HEIRS OF WILLIAM E. BURNHAM, *Appellants*, v. HITT.

Division Two, March 29, 1898.

1. **Conveyances:** DESCRIPTIONS: MONUMENTS: GOVERNMENT NUMBERS. Monuments when called for in the description of land in a deed will control calls for courses and distances; natural monuments are higher in value than artificial ones. So that a deed which described the land as "the east half of the northeast quarter of section 30, township 53, range 13, the west line being a creek running between the premises now occupied by said Davis and the land herein conveyed," really conveyed the east half of the northeast quarter to the creek and no further. So much of said east half of the northeast quarter as lay west of the creek remained in the grantor.

2. **Partition:** JUDGMENT: DESCRIPTION IN DEED. An indispensable prerequisite to the validity of a partition sale is that it should be based upon a valid judgment, decree or order of sale; and any sale of land not included in the decree, and any recital of description in the sheriff's deed not warranted by the decree and advertisement of the sale, are without authority of law and pass no title to such extra portion.

3. ———: CONVEYANCES: MONUMENTS: PARTIES: DESCRIPTIONS. Davis made a deed to defendant's ancestor which described the land as "the east half of the northeast quarter of section 30, township 53, range 13, the west line being a creek running between the premises now occupied by said Davis and the land herein conveyed." The petition in partition of Davis's land, after his death, described his

land in the northeast quarter simply as "the west half," and the decree and the advertisement of sale described it in the same way, but the sheriff's deed to plaintiffs' ancestor said: "It was understood at said sale by order of the parties to this suit that whoever bought the northwest quarter of the northeast quarter, was to purchase with the understanding that the branch known as Davis creek was to be the east line." *Held*, that Davis at the sale of the east half retained that part thereof which lay west of the creek, and at his death it went to his heirs; that the sheriff in selling, at the partition sale, the west half, did not sell to the creek, but only the west half, and hence the plaintiffs could not recover herein the strip lying between the creek and the land described in the decree. *Held*, also that the heirs of Davis can not in this suit be held to be estopped to claim this strip, because they are not parties to this suit.

*Appeal from Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*C. E. Burnham* and *Frank P. Wiley* for appellants.

(1)   Where the line between adjoining proprietors is uncertain, or they are ignorant of its true location, and they fix upon a permanent boundary line, and possession is taken accordingly, the agreement is binding on them and those claiming under them. *Taylor v. Zepp*, 14 Mo. 344; *Blair v. Smith*, 16 Mo. 273; *Kincaid v. Dormey*, 47 Mo. 340; *Turner v. Baker*, 64 Mo. 218; *Jacobs v. Mosley*, 91 Mo. 457; *Coleman v. Drane*, 116 Mo. 393; *Golberman v. Schurmeyer*, 111 Mo. 423; 1 Thompson on Trials, secs. 1464 and 1465; *Burris v. Fitch*, 76 Cal. 395; *Dibble v. Rogers*, 13 Wend. 536; *Davis v. Judge*, 46 Vt. 655; *Spaulding v. Warren*, 25 Vt. 316.   (2)   Plaintiff claims that when the land was partitioned, ordered sold, advertised, etc., all as the west half of the northeast quarter, section 30, etc., it included all the land to the creek as the east boundary, in accordance with the agreement as to boundary, acquiesced therein, and intention of the

parties, and that he has the absolute legal title to all the land in the northwest quarter of northeast quarter to the creek as the boundary line. That the Davis heirs owned this strip before the sale, that they intended to sell it and did sell it to plaintiff. That the sale in partition was the voluntary act of the parties to the suit, and has the same effect as if they had all joined in deeding the "west half of northeast quarter." *Pintz v. Kenster*, 41 Mo. 447; 3 Wash. Real Prop., pp. 232–237; *Kelly v. Clancy*, 15 Mo. 519. Deeds take effect according to the intent of the parties. 3 Wash. Real Prop., p. 403–421; *Agan v. Shannon*, 103 Mo. 661; *Cleveland v. Obenchain*, 107 Ind. 593; *Calloway v. Henderson*, 130 Mo. 77. (3) Plaintiff claims that he is entitled to recover to the creek line because the evidence shows that the defendant had repeatedly stated that the creek was the line of his boundary; that at the sale the sheriff announced that the purchaser would take title to the creek; that the defendant was present and made no objection to the announcement, and gave no notice of his title or claim, and that he is now estopped from claiming the land and denying that the creek is the boundary line. A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, can not afterward dispute that fact in an action against the person whom he himself assisted in deceiving. *Guffy v. O'Reilly*, 88 Mo. 426; *Turner v. Baker*, 64 Mo. 219; 2 Kent [13 Ed.], p. 643, note D. and 703, note D. Or if he stands by and does not forbid the purchase, he is bound. *Suddarth v. Robertson*, 118 Mo. 286. An action of ejectment can be maintained on a title by estoppel. *Stoddard v. Chambers*, 43 U. S. 1 ; *Suddarth v. Robertson*, 118 Mo. 287; *Sickerson v. Colgrove*, 100 U. S. 578.

*Martin & Terrill* for respondent.

(1) In order to sell the land for partition it must be described in the order of sale. Rorer on Judicial Sales [2 Ed.], sec. 407. And the petition must particularly describe the premises sought to be divided. R. S. 1889, sec. 7134. This partition sale was made in conformity with the law governing sales of land by the government. Tiedeman on Real Prop., secs. 744 and 832. (2) Appellant must show title in himself before he can recover in this case. *Foster v. Evans*, 51 Mo. 39; *West v. Bretelle*, 115 Mo. 653. (3) Appellant must recover on the strength of his own title and not on the weakness of respondent's. *Railroad v. McCabe*, 118 Mo. 639; *Semmers v. Schrader*, 14 Mo. App. 346; *Foster v. Evans*, 51 Mo. 39; *West v. Bretelle*, 115 Mo. 653. (4) It is not sufficient for appellant to show equitable title in him. *Hunt v. Selleck*, 118 Mo. 588.

GANTT, P. J.—This is an action of ejectment for the northwest quarter of the northeast quarter of section 30, township 53, range 13, Randolph county, Missouri, but as a matter of fact only a small strip of said forty acres and another small strip of the west side of the northeast quarter of the northeast quarter, of said section, are involved in this suit.

The controversy originated in a recitation in a deed made by Joseph Davis in March, 1864. Joseph Davis, who at that time owned the whole quarter section, conveyed eighty acres more or less to his son, M. K. Davis, and described it as "the east half of the northeast quarter of section 30, township 53, range 13, the west line being a creek running between the premises now occupied by said J. Davis and the land herein mentioned by this deed." At that time the strip now in

controversy was not inclosed and a large part of the quarter section was not. In 1874 M. K. Davis sold and conveyed to B. H. Tolson "the east half of the northeast quarter of section 30, township 53, range 13," and calls it "eighty acres more or less." In 1884 Tolson and wife by warranty deed conveyed to defendant Hitt "the east half of the northeast quarter of section 30 . . . . . . . containing 80 acres more or less." During all these years the strip now in controversy was not inclosed by a fence. After defendant had owned the east half of the northeast quarter about eight years, or in 1892, he fenced down to the creek at the north end of his eighty acres, the strip in controversy lying on the opposite or west side of the creek. Sometime in 1894 defendant fenced across the creek with a view to inclosing all of the east half of the northeast quarter of section 30, according to the survey by the United States government, but in so doing he fenced into his inclosure about two and one-half acres of the northwest quarter of the northeast quarter of said section. The accompanying plat will assist in understanding the controversy.

There was evidence tending to prove that after defendant's purchase he cleared and fenced to the creek at the south end, across the government line at that point, but only fenced to the creek at the north end. There was evidence also that he knew the creek was the dividing line between the two eighty acre tracts; that on one occasion he obtained permission from the heirs of Joseph Davis to build across a crook in the creek on the north end in order to get stock water into his pasture, and on several occasions stated the creek was the line. After the execution of the deed by Joseph Davis to his son, he and his heirs paid taxes on the "west half," and his grantees, on the "east half, NE. qr. of section 30." In the year 1892

or 1893 the heirs of Joseph Davis petitioned for the partition and sale of the west half of the northeast quarter of section 30, and obtained a decree of partition and sale. In the petition, order of sale and advertisement by the sheriff the land was described as the "west half, NE. qr. section 30, township 53, range 13." At the sale William E. Burnham, the ancestor of plaintiffs, bought the northwest quarter of the northeast quarter of said section 30, and received a deed containing among other recitals the following: "The northwest quarter of the northeast quarter of section 30, township 53, range 13, in Randolph county, Missouri. It was understood at said sale by order of the

parties to this suit that whoever bought the northwest quarter of the northeast quarter of section 30, township 53, range 13, was to purchase with the understanding that the branch known as Davis Creek was to be the east line.''

The cause was tried by the court without the intervention of a jury, and judgment rendered for the plaintiffs for possession of so much of the land held by defendant as was included within the government survey of the northwest quarter of the northeast quarter, and for defendant for the strip west of the creek lying within the government lines of the northeast quarter of the northeast quarter of said section. Plaintiffs appeal.

Firmly anchored in the law of procedure in this State is the common law doctrine that in an action of ejectment the plaintiff seeking to recover the possession of land occupied by another must recover upon the strength of his own title and not on the weakness of the defendant's title. It was entirely competent for Joseph Davis in his deed to his son M. K. Davis to limit the land sold to his son by the natural boundary of ''Davis Creek,'' and notwithstanding he had described the land by designating it as a fractional part of a recognized government survey, which, contained eighty acres more or less, the creek was the boundary on the west under that grant. It is a fixed principle that monuments when called for in the description of land in a deed will control' calls for courses and distances, and natural monuments are higher in value than artificial ones. *West v. Bretelle*, 115 Mo. 653; *Rutherford v. Tracy*, 48 Mo. 325; *Shewalter v. Pirner*, 55 Mo. 218. It follows then that Joseph Davis and his heirs retained the title to all the land in the northeast quarter of the northeast quarter of section 30, which lies west of Davis creek. From this fact plain-

tiffs draw the conclusion that they have become the owners of said strip west of the creek. But does this necessarily follow? We think most clearly not. On the contrary it must appear that their title so reserved has passed to and become vested in plaintiffs. Plaintiffs deduce their title, it is true, through the heirs of Joseph Davis but their title depends upon the proceedings and judgment in the partition case between the said heirs. Recurring to those proceedings it will be observed that the heirs of Joseph Davis only petitioned to have the west half of the northeast quarter of section 30, township 53, range 13, partitioned and sold and not the strip in controversy. The circuit court in its decree only ordered that the west half of the northeast quarter be sold for partition, and the order for sale and advertisement of sale simply described it as the west half of the northeast quarter and Mr. Burnham the ancestor of plaintiffs and through whom alone they deduce title testified that the advertisement only described it as the west half of the northeast quarter and said nothing about it extending to the creek; that he only bought the piece that was sold. Now the heirs of Davis are not parties to this suit and it is perfectly clear that in order to divest them of their legal title there must have been a petition and a decree directing the sale of this strip now in dispute. A partition sale is a judicial sale and it is an indispensable prerequisite to the validity of such a sale that it should be based upon a valid judgment, decree or order of sale. *Evans v. Snyder*, 64 Mo. 516; Rorer on Judicial Sales, sec. 407.

The sale of land not included in the decree by the sheriff is without authority of law and his deed conveys no title thereto. Much stress is laid upon an estoppel of the Davis heirs on account of certain inquiries put to the sheriff as to the lines of this forty running to the

creek but it is obvious that in this action of ejectment defendant is not concerned with that question, and it is certain we can not divest the Davis heirs of their title in this proceeding to which they are not parties and of which they have no notice. Plaintiffs' paper title gives them no right to this land and as it is incumbent upon them to make out their title the judgment of the circuit court is clearly right and must be and is affirmed. SHERWOOD and BURGESS, JJ., concur.